UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JOE M. TONEY, JR.,                          :
                                            :
          Plaintiff                         :    No. 4:CV-11-0780
                                            :
     vs.                                    :    (Judge Nealon)
                                            :
                                            :        **FILED**
LT. SASSAMAN, et al.,                       :       **SCRANTON**
                                            :
          Defendants                        :       MAR 1 8 2014

                                            PER _____
                    **MEMORANDUM**             DEPUTY CLERK

**BACKGROUND**

     Joe M. Toney, an inmate formerly confined in the United States Penitentiary

Lewisburg, Pennsylvania, ("USP-Lewisburg"), filed the above captioned Bivens[1]

action pursuant to 28 U.S.C. § 1331. (Doc. 1, complaint).[2] He complains of an

incident which occurred while housed in USP-Lewisburg. Id. The named

Defendants are the following USP-Lewisburg employees: Lieutenant A. Sassaman,

───────────────

1.Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388,
397 (1971).

2.Plaintiff is currently housed in the United States Penitentiary Administrative
Maximum Facility (ADX) in Florence, Colorado. (Doc. 13-1 at 3, Declaration of
Michael S. Romano, USP-Lewisburg Attorney Advisor). The ADX fulfills a
complex mission that involves safely housing the federal Bureau of Prisons' (BOP)
most violent, disruptive, and escape-prone inmates in an environment which
provides these inmates with opportunities to demonstrate improved behavior and
the ability, motivation, and willingness to eventually reintegrate into an open
population. Id.

and Correctional Officers G. Kulago, D. Reed, and J. Carpenter. Id. Plaintiff

alleges that on August 27, 2009, Defendants discarded his personal property and

legal materials and correctional officer Kulago "had given [him] food that had

something in it, it damage [his] nerve's [sic] and it had [him] bleeding." Id. at 2.

Plaintiff further attempts to raise a retaliation claim by stating that "the prison

officials 'adverse actions' was directly related to [his] 'protected conduct' in case

no. 4:09-cv-1412." Id. at 3. For relief, Plaintiff seeks compensatory and punitive

damages, plus nominal damages and cost of suit. Id. at 4.

Presently pending is Defendants' motion to dismiss and for summary

judgment, (Doc. 12), and Plaintiff's cross motion for summary judgment. (Doc. 24).

The motions are fully briefed and are ripe for disposition. For the reasons outlined

below, Defendants' motion to dismiss and for summary judgment will be granted,

and Plaintiff's motion for summary judgment will be denied.

## I.   Standards of Review

### A.   Motion to Dismiss

The Court in Williams v. Hull, 2009 WL 1586832, *2-3 (W.D. Pa. 2009), set

forth the Motion to Dismiss standard of review, as annunciated by the Supreme

Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007), and as refined in

Ashcroft v. Iqbal, 556 U.S. 662 (2009), as follows:

The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S.Ct. 1937, ----, 173 L.Ed.2d 868, ----, 2009 WL 1361536 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."

Id. at 570. In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, *1 (D. Del. 2008), quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary element." <u>Phillips</u>, 515 F.3d at 232, <u>quoting</u> <u>Twombly</u>, 550 U.S. at 556 n.3.

## B. <u>Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court

4

must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations.  Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or by demonstrating that a factual assertion is unsupportable by admissible evidence.  FED. R. CIV. P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).  Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the

purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition.  FED. R. CIV. P. 56(e).

## C.   Bivens Standard

A Bivens civil rights action under § 1331 has the same standards as does a § 1983 civil rights action.  In Naranjo v. Martinez, 2009 WL 4268598, *6 (M.D. Pa. 2009), the Court stated:

> Bivens creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).  A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a Bivens claim. Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001); Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Cyrus v. Hogsten, No. 06–2265, 2007 WL 88745, at *3 (M.D. Pa. Jan.9, 2007). To state a claim under Bivens, the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. Brown, 250 F.3d at 800; Cyrus, 2007 WL 88745, at *3.
>
> Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983.  Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Further, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through

6

the official's own individual actions, has violated the constitution." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (collecting cases).

It is well-established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of respondeat superior. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. Id. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs .... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.
>
> A civil rights complaint must state time, place, and responsible persons. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability.

See Rode, 845 F.2d at 1208 (Citations omitted).

7

## II.    Statement of Facts

From the pleadings, declarations, and exhibits submitted therewith, the following facts can be ascertained as undisputed.

On August 27, 2009, at 9:51 a.m., Toney was seen in Health Services at USP-Lewisburg complaining about intermittent pain and swelling from a stab wound two months earlier. (Doc. 13-1 at 18, Health Services Clinical Encounter-Administrative Note, 08/27/09). Plaintiff's physical exam revealed a "1 cm scar L upper neck and fairly insignificant mass" with "no bruit". Id. However, a Carotid Duplex Bilateral and ultrasound of the neck were ordered. Id.

On August 28, 2009, at 12:45 p.m., Plaintiff was served with Incident Report No. 1911163, charging him with "Damaging a Safety Device", a violation of Code 218. (Doc. 13-1 at 14, Incident Report). The incident report, which was written by Correctional Officer K. Carroll, reads as follows:

> On [August 27, 2009 at 10:38 p.m.] I was conducting a range tour on G block second floor and saw large amounts of water coming out from under cell door G212. After further inspection it was found that inmate Toney had removed the fire sprinkler head and was pushing the water onto the second floor range. The fire suppression system had to be shut off the entire left side of the G Block second floor to stop the flow of water.

Id.

On August 28, 2009, at 12:40 p.m., Health Service Staff performed an injury

8

assessment on Toney in the Health Services Department, due to Plaintiff being subjected to a calculated use of force with the use of a chemical agent and placed in ambulatory restraints at 11:25 a.m. that day. (Doc. 13-1 at 25, Health Services Clinical Encounter, (08/28/09). Toney stated that he had pain in his left arm, burning eyes, nasal drainage, and a cut on his left arm that was bleeding. Id.

It was noted that Toney sustained a "self inflicted wound to the left forearm" which was approximately "3-4 cm" with "moderate bleeding." Id. Staff also noted that Toney appeared to be in pain and was agitated, his eyes were red, and he had discharge coming from his eyes and nose. Id. The Health Services staff further noted that Toney was alert and oriented, he had no swelling about his head, eyes, ears, nose, or face, and his pulse was normal. Id.

An x-ray of the left forearm and wrist were taken, staff sutured the wound in Toney's left forearm, and an antibiotic and ibuprofen were ordered. Id. Toney was then assured that an ambulatory restraint check and follow up would be conducted twice a shift. Id.

On August 28, 2009 at 2:19 p.m., Health Services staff performed an ambulatory restraints check on Toney in the Special Housing Unit ("SHU") at USP-Lewisburg, noting:

Inmate appears cooperative but complains of pain in the left forearm.

9

Tetanus Toxoid given in the left forearm. Patient tolerated well. Restraints on both upper and lower extremities are intact. Good capillary filling. No sign of vascular compromise. Bandages are intact.

(Doc. 13-1 at 24, Health Services Clinical Encounter - Administrative Note, 08/28/09). It was noted that Toney's blood pressure was 152/92 and his pulse was 82 beats per minute. Id. Toney was informed that the sutures in his left arm would be removed on the seventh day. Id.

On August 28, 2009 at 5:21 p.m., Health Services staff examined Toney in the SHU, noting that he was agitated but appeared well, was alert and oriented, did not appear to be ill, in pain, or distress, and his pulse was 76 beats per minute. (Doc. 13-1 at 22, Health Services Clinical Encounter - Administrative Note, 08/28/09).

On August 28, 2009 at 8:25 p.m., Health Services staff examined Toney in the SHU and noted that he appeared well, he was alert and oriented, he did not appear to be in distress, his pulse was 87 beats per minute, and his blood pressure was 117/63. Id. at 21. It is further noted that staff issued an antibiotic and ibuprofen and counseled Toney on the importance of completing the antibiotic therapy. Id.

On September 7, 2009, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See id., Committee Action). The UDC decided that "based on the [inmate's] admittance of guilt, post and current history", the UDC would refer the charge to the Discipline Hearing Officer ("DHO"), with the recommendation that

10

"max sanc[tions] be applied and restitution for damage to gov. prop.". Id.

Also on September 7, 2009, Toney was provided with a "Notice of Discipline Hearing before the (DHO)" form, in which he was notified that his hearing would be held "ASAP." (Id. at 15). Toney waived his rights to have a staff member represent him and to call witnesses. Id.

On September 10, 2009, Toney submitted Request for Administrative Remedy No. 556492-F1, in which he stated:

> Sensitive issue 8/28/09, (Breakfast), C.O. P. Boulet, D. Reed, G. Kulago and J. Carpenter, was picking up trays. I ask P. Boulet for my property on the side of my door. J. Carpenter said somebody should threw [sic] that shit away- that shit is trash anyway- (it's in a bag). G. Kulago took my property from my room door # G212 and put it out the back door. I ask him why. D. Reed said he got it and he threwing [sic] it away-it's wet and trash. I have (3) cases in court (2) civils on this administration and (1) criminal case on direct appeal with all my court transcripts and legal documents on all (3) cases, personal (items) belonging (inside) my property. Captain Budworth said they didn't threw [sic] my property away-then came back a week later and said it's gone. These officers abuse their authority. I ask investigation- review of cameras and something done.

(Doc. 1, Ex. 2, Request for Administrative Remedy No. 556492-F1).

On September 16, 2009, Toney appeared for a hearing before DHO Chambers. (Id. at 11-13, DHO Report). During the DHO hearing, he was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Toney received a copy of the incident report, and that he did not want a staff

11

representative, or to call witnesses. Id.

A summary of Toney's statement at the hearing is as follows:

Inmate Toney acknowledged he understood his rights before the DHO and was ready to proceed with the hearing. Inmate Toney presented no documents for the DHO to consider. Inmate Toney testified that Section 11 of the incident report is completely accurate. Inmate Toney testified that he broke the sprinkler head in order to get medical attention. Inmate Toney testified that he needed immediate medical attention based on his belief staff are poisoning his food. Inmate Toney made no complaints of procedural errors during the hearing.

The DHO advised inmate Toney that this hearing is not the forum to raise the allegations of staff poisoning his food. Toney was advised to utilize the Administrative Remedy Procedures to address these allegations. Toney acknowledged he understood, and stated he has already filed Administrative Remedy complaints regarding his allegations of staff poisoning his food. Toney further stated that the issue of staff poisoning his food would "ultimately end up in federal court."

Id. The DHO found Toney guilty of a code 218 violation for destruction of a life

safety device and sanctioned Petitioner to disallowance of twenty-seven (27) days

good conduct time and restitution in the amount of sixty dollars. Id.

On September 21, 2009, Toney submitted Request for Administrative Remedy

No. 558161-F1, in which he stated:

Sensitive issue 9/14/09 the C/O had given me my food with poison or some strange nerve medication in my food. 12:00 p.m. lunch. This is the 2nd time this happen. On both ocasions [sic] I have cut myself. I felt something in my bloodstream until the middle of the night while in restraints. I seen medical, Ivan Navarro, he said he put me in for a blood

test the next day for food poison in which I have never receive. The Lt. had the psychology come see me instead of the bloodtest. This retaliation do to the civil case been accepted in court and this administration been submit subpeona [sic] for court. I feel my life is in danger. I ask to be transfer.

(Doc. 13-1 at 33, Request for Administrative Remedy No. 558161).

In a response dated September 24, 2009, Warden Bledsoe denied Plaintiff's

Administrative Remedy No. 556492-F, finding the following:

In your request for Administrative Remedy, you claim on August 28, 2009, at the breakfast meal, staff were picking up food trays and you asked them for your property sitting outside your cell door in a bag. You claim a staff member stated, "somebody should throw that shit away, that shit is trash anyway." You claim you had several legal documents and personal items in the bag. You claim staff abused their authority and are asking for an investigation and the cameras be reviewed.

An inquiry was conducted into this matter and records reflect on August 27, 2009, you broke the sprinkler head off in your cell resulting in most of your property being destroyed. On August 28, 2009, staff observed several pieces of clothing, loose papers, and personal pictures of yours in the hallway. Several staff members interviewed indicated they did not observe any legal paperwork in the soaked, loose papers. Staff did pick out your personal photographs to dry them out and return to you. Subsequently, no merit was found to support staff misconduct.

Based on the above, your request for administrative remedy is denied. If you are dissatisfied with this response, you may appeal to the Regional Director, United States Federal Bureau of Prisons, Northeast Regional Office, United States Custom House-Seventh Floor, Second and Chestnut Streets, Philadelphia, PA 19106, within twenty (20) calendar days from the date of this response.

(Doc. 1, Ex. 3, Administrative Remedy Response).

On October 4, 2009, Toney filed Regional Administrative Remedy Appeal No. 556492-R1 to the Regional Director, challenging the denial of his administrative remedy for insufficient support of staff misconduct.  (Doc. 1, Ex. 4, Regional Administrative Remedy Appeal No. 556492-R1).

On October 9, 2009, Warden Bledsoe denied Plaintiff's Request for Administrative Remedy No. 558161, finding, after an inquiry into Plaintiff's allegations, that there was no merit to support staff misconduct.  (Doc. 13-1 at 34, Administrative Remedy Response).

On October 15, 2009, Toney filed Regional Administrative Remedy Appeal No. 558161-R1, stating the following:

> 8/17/09 I was food poison by C/O Kulago, this officer been summon to court on a claim. 9/10/09 I file a timely BP (9) that was sent back for no apparent reason - 9/14/09 the day I was food poison again by another officer. Occasionally my grievances don't be turn (in) which force me to submit another. This administration is making it hard for me to file - when an incident occur. The first incident I was refuse medical. Lt. Sassaman has taken all my property 8/27/09. This 2nd incident (food poison) 9/14/09. P.A. Ivan Navarro told me he put in for a blood test for the next day instead they have psychology to come see me. This administration is using manipulation & retaliation to keep me from filing to the federal court in which they has been summon. I ask that something be done & to be transfer.

(Doc. 13-1 at 31, Regional Administrative Remedy Appeal No. 558161-R1).

By Response dated November 5, 2009, Regional Director Norwood denied

Toney's Regional Administrative Remedy Appeal No. 556492-R1, finding that

> A review of your appeal revealed you broke the sprinkler head in your
> cell resulting in most of your property being destroyed. However, if
> you seek money due to damage or loss to your property allegedly
> caused by staff negligence, you may consider filing a separate claim
> under the FTCA or 31 U.S.C. § 3723, whichever applies, to the
> Regional Counsel for the Region where the loss of damages occurred.
> As indicated by the Warden, a review of your allegations failed to
> substantiate your claims. You have not provided any additional
> information or evidence which supports your allegations or warrant
> further review. Accordingly, your appeal is denied.

> If you are dissatisfied with this response, you may appeal to the General
> Counsel, Federal Bureau of Prisons. Your appeal must be received in
> the Administrative Remedy Section, Office of General Counsel, Federal
> Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534,
> within 30 calendar days of the date of this response.

(Doc. 1, Ex. 5, Response).

By Response dated November 16, 2009, Regional Director Norwood denied

Toney's Regional Administrative Remedy Appeal No. 558161-R1, finding the

following:

> You appeal the decision of the Warden at USP-Lewisburg regarding
> your allegation that on September 14, 2009, staff poisoned your food
> with some type of nerve medication. You claim medical staff told you
> they were going to put in for a blood test the next day, but instead, you
> were seen by Psychology Department staff. You claim this is being
> done as a form of retaliation for a civil case you have filed. You
> request to be transferred.

> Upon review of your appeal, this office confirmed that your allegation
> was referred to the proper authority for review and the review failed to

substantiate your claims. There is no indication, and you have failed to present any credible evidence staff acted in an inappropriate manner. We find no further relief is warranted. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

(Doc. 13-1 at 32, Response. ).

Also on November 16, 2000, Plaintiff submitted Central Office

Administrative Remedy Appeal No. 556492-A1, in which he stated:

8/27/09, Lt. Sassaman place my property in a bag and put it on the side of my room door G#212. From a result of my breaking the sprinkler 8/28/09, C/O Kulago took my property from the side of my door. Together him and C/O Reed claim they threw it away. I had books-personal items-court transcripts for appeal-legal documents and photos. This was illegal done. I have not received papers-confiscation sheet-nothing. Everything is going off the officers' word and I ask for a review of the camera. I have nothing concerning my property and everything was in my property. I'm asking to be compensated for my property.

(Doc. 1, Ex. 6, Central Office Administrative Remedy Appeal No. 556492-A1).

On November 29, 2009, Toney submitted Central Office Administrative

Remedy Appeal No. 558161-A1, in which he stated:

9/14/2009 there were many officers came down the tier to feed. The officer given me my food this day did not come back down the tier so I was not able to get his name. Whatever it was I ate had my heart

> beating real fast. It could have kill me. And had my nerves excited.
> Blood and saliva has come from my bowel movement. This was a
> continues until I broke the sprinkler in fear of my life. I have inmate's
> witness's to support my claims. . . .I ask that these inmates be
> interviewed and that something done.

(Doc. 13-1 at 29, Central Office Administrative Remedy Appeal No. 558161-A1).

On March 1, 2010, Plaintiff filed an administrative tort claim under the

provisions of 31 U.S.C. § 3723, which provides for the payment of claims "caused

by the negligence of an officer or employee of the U.S. Government acting within

the scope of employment", stating the following:

> 08/27/09, Lt. Sassaman place my property in a big bag and put it on the
> side of my room door G#212. On 08/28/09, morning, C/O G. Kulago
> took my personal property from my room door G3212 and put it out the
> back door with all my personal belongings and legal documents. C/O
> Reed came back on the tier and told me he threw it away. He said it
> was wet and trash (i.e. meaning to him). A review of the camera will
> reveal this on this date.

(Doc. 1, Ex. 8, Small Claims for Property Damage or Loss (31 U.S.C. § 3723).

By Response dated March 31, 2010, Plaintiff's Central Office Administrative

Remedy Appeal No. 558161-A1, was denied, based on the following:

> This is in response to your Central Office Administrative Remedy in
> which you state staff threw your personal property in the trash and you
> request compensation.
>
> Our review reveals the Warden and Regional Director adequately
> responded to the issues raised in your appeal. Your property was
> damaged when you broke the sprinkler head in your cell. Review of the
> situation did not find evidence of staff misconduct. We therefore

concur with the responses provided.

> Finally, as to your request for monetary damages, the Administrative Remedy Program does not provide for monetary relief. Your request for monetary compensation should be pursued through the appropriate statutorily mandated procedure to resolve this issue.

(Doc. 1, Ex. 7, Response).

By Response dated April 2, 2010, Plaintiff's Central Office Administrative Remedy Appeal No. 558161-A1, was denied, finding no evidence to support Plaintiff's allegations staff tampered with his food. (Doc. 13-1 at 30, Response).

In a Memorandum dated September 7, 2010, Plaintiff's administrative tort claim was denied based on the following:

> Your Administrative Claim No. TRT-NER-2010-03137 properly received by this agency on March 4, 2010, has been accepted and considered for administrative settlement under 31 U.S.C. § 3723 which provides for the payment of claims which are "caused by the negligence of an officer or employee of the U.S. Government acting within the scope of employment." You seek compensatory damages in the amount of $1,000.00 for an alleged personal property loss. Specifically, you claim staff at USP-Lewisburg threw away your property on August 28, 2009.

> After careful review of this claim, I have decided not to offer a settlement. The investigation reveals that on August 27, 2009, you intentionally flooded your cell at USP-Lewisburg causing most of your property to be destroyed by water damage. Staff did attempt to preserve some personal photographs. There is no evidence to suggest you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee. Accordingly, your claim is denied.

> If you are dissatisfied with this decision, you cannot file suit in the
> United States District Court as there is no judicial review for claims
> decided pursuant to 31 U.S.C. § 3723. You may request, in writing,
> that the BOP reconsider your claim. Your request for reconsideration
> must be submitted within three months of the date of this letter. You
> must include additional evidence of the damage or loss to support your
> request for reconsideration.

(Doc. 1, Ex. 9, Memorandum dated September 7, 2010).

On April 22, 2011, Toney filed the instant action. He alleges that on August 27, 2009, Defendant Kulago gave him his food "that had something in it" and "it damage [his] nerves and it had [him] bleeding." (Doc. 1, complaint at 2).[3] He further alleges that Defendant Sassaman "told [him] 'cuff up' so he can get [Plaintiff's] property", which was "placed in a bag and put on the side of [Plaintiff's] room door." Id.

Plaintiff claims that when he asked for his property on August 28, 2009, Defendant Carpenter said "somebody should threw [sic] that shit away, that shit is trash anyway, it's in a bag." Id. Plaintiff alleges that Defendant Kulago "took [his] property from the side of [his] room door, G#212, and put it out the back (tier range)

---

3. In his supplemental brief in opposition to Defendants' motion to dismiss and for summary judgment, Plaintiff withdraws this claim, stating "Plaintiff is not filing suit because of (food poise [sic]), Plaintiff been transfer since to Florence, ADX. This suit is in regards of Officers (dispose) threw away Plaintiff personal property and personal belongings." See (Doc. 21 at 13). As such, the Court will not address this allegation.

door." and that Defendant Reed "appear from the back door to the tier range and said he got [Plaintiff's] property and he's threwing [sic] it away, it's wet and that shit is trash." Id.

## III.   Discussion

### A.   Deprivation of Property

In Parratt v. Taylor, 451 U.S. 527 (1981), an inmate claimed that prison officials had negligently deprived him of his property without due process of law. The Parratt Court held that the alleged loss constituted a deprivation of property under the Fourteenth Amendment's due process clause. Id. at 536–37.  Nevertheless, the Court also held that negligent deprivations by state officials of a prisoner's personal property are not actionable under the due process clause where a remedy exists under state law for reimbursement. Id. at 541–43.

Subsequently, in Hudson v. Palmer, 468 U.S. 517 (1984), the Court held that, regardless of whether a government employee intentionally or negligently deprived an inmate of his or her property, the deprivation does not violate the due process clause as long as the inmate has adequate post-deprivation remedies available under state law. Id. at 533.

In Daniels v. Williams, 474 U.S. 327, 330–31 (1986), the Court overruled the holding in Parratt that a mere lack of due care by a state official may deprive an

20

individual of property under the Fourteenth Amendment. Id. at 330–31. The Daniels Court concluded "that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Id. at 328.

In a more recent case, the Third Circuit Court of Appeals invoked the holding in Hudson in determining that the District Court properly found that a state inmate had failed to state a procedural due process claim where he was provided with a meaningful post-deprivation remedy regarding the loss of his property through the state prison system's internal grievance procedure. Mattis v. Dohman, 260 Fed. Appx. 458, 461 (3d Cir. 2008) (citing Hudson 468 U.S. at 533).

In this case, to the extent Toney's claim is that USP-Lewisburg staff negligently lost the bag that contained his personal property, there has been no deprivation of property under the due process clause. See Daniels, 474 U.S. at 328. To the extent Toney's claim is that USP-Lewisburg staff intentionally lost or destroyed his property, the relevant inquiry is whether an adequate post-deprivation remedy was available to Toney to address the loss of his property.

The Court finds that Toney had adequate post-deprivation remedies available to him through the BOP administrative remedy process. The BOP Administrative Remedy Program allows inmates to seek formal review of an issue relating to any

aspect of his or her confinement. See 28 C.F.R. §§ 542.10 through 542.19. The BOP also has an administrative tort claims procedure whereby a federal inmate may file a claim with regard to his damaged or lost property. See 28 C.F.R. §§ 543.30 through 543.32. Toney does not allege that these procedures were not available to him. To the contrary, the allegations in his Complaint and the attachments thereto reveal that he availed himself both of the BOP Administrative Remedy Program and the BOP's administrative tort claims procedure. Because Toney had adequate post-deprivation remedies available to him, he fails to state a due process claim upon which relief may be granted, and his Bivens claims must be dismissed.

In dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002). In this case, any due process claim, whether based upon negligent or intentional conduct, would fail to state a claim upon which relief may be granted because Toney had an adequate post-deprivation remedy.[4]

---

4. To the extent Toney argues in support of his motion for summary judgment that there are prison policies that require staff to inventory inmate personal property in the inmate's presence and that staff may not dispose of inmate personal property without the inmate's consent, and that Defendants failed to provide him with a confiscation form to notify him of the items that were not returned to him, Toney fails to reference such a policy. See (Doc. 25, Plaintiff's statement of material

Accordingly, amendment would be futile, and dismissal of Toney's <u>Bivens</u> claims will be with prejudice.

### B.    Retaliation

Toney alleges that Defendants' "adverse actions was directly related to [his] protected conduct in case no. 4:09-cv-1412."[5]  (Doc. 1, complaint at 3). To the extent such allegation can be construed as a retaliation claim, it is without merit.

To establish a viable retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  <u>Id</u>. (quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225

---

facts).  While Program Statement 5580.08, Inmate Personal Property, sets forth rules that contribute to the management of an inmate's property and the use of Inmate Property Inventory Records, it does not specify that BOP staff must inventory an inmate's personal property in the inmate's presence, or that staff may not dispose of an inmate's personal property without the inmate's consent. <u>See</u> (Doc. 31-1 at 5, Program Statement 5580.08 §3(c)). The program statement requires BOP staff to inventory confiscated contraband and store it pending identification of the true owner and possible disciplinary action. <u>Id</u>. § 5(b)(2). Once again, however, Plaintiff had an opportunity to challenge the applicability of Program Statement 5580.08 to his property through the BOP Administrative Remedy Program.

5. The Court takes judicial notice of <u>Toney v. Bledsoe</u>, Civil Action No. 4:09-cv-1412, slip. op. (M.D. Pa. Jan. 29, 2010) (Muir, J.).

(3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient

'to deter a person of ordinary firmness' from exercising his First Amendment

rights." Id. (quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third,

a prisoner must prove that "his constitutionally protected conduct was 'a substantial

or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333–34

(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).  The mere fact

that an adverse action occurs after either a complaint or grievance is filed is relevant,

but not dispositive, for the purpose of establishing a causal link between the two

events.[6] See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to

prove by a preponderance of the evidence that they "would have made the same

decision absent the protected conduct for reasons reasonably related to penological

interest." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation

and citation omitted).  When analyzing a retaliation claim, it must be recognized that

the task of prison administrators and staff is difficult, and the decisions of prison

officials require deference, particularly where prison security is concerned. Rauser,

241 F.3d at 334.

---

6.Only where the facts of a particular case are "unusually suggestive" of a
retaliatory motive will temporal proximity, standing alone, support an inference of
causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

As noted in <u>Allah</u>, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional.  On the contrary, a plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

With respect to the discarding of Plaintiff's personal property, Toney alleges that the alleged retaliatory conduct was undertaken for his filing of <u>Toney v. Bledsoe</u>, Civil Action No. 4:09-cv-1412, slip. op. (M.D. Pa. Jan. 29, 2010) (Muir, J.).  The filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  <u>Anderson v. Davila</u>, 125 F.3d 148, 161 (3d Cir. 1997); <u>Milhouse v. Carlson</u>. 652 F.2d 371, 373–74 (3d Cir. 1981).  Accordingly, the first prong of <u>Rauser</u>, that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

However, the Court finds no evidence that Toney was deterred from pursing the legal activities that were occurring at the time of the incident, from filing the administrative remedies that were necessary for him to file before he initiated the instant action, or from vigorously advancing his claims against the Defendants.  Nor does the Court find that the record establishes a causal connection between Defendants' actions in discarding Toney's personal property on August 28, 2009,

25

and Plaintiff's Civil Action No. 4:09-cv-1412, which was filed on July 21, 2009.

Rather, the record reflects that Toney intentionally flooded his cell on August 27, 2009, which resulted in his property being damaged. Given the short duration of time between Plaintiff's intentional flooding of his cell and the discarding of his property, it is apparent that the disposal of the property was not in response to Toney's July 21, 2009 filing of Civil Action No. 4:09-cv-1412, but to his disruptive conduct in breaking the sprinkler head in his cell and flooding his cell. Thus, Toney has not shown that his engagement in constitutionally protected conduct was a substantial or motivating factor underlying either the disposal of his property or the decision to discipline him for breaking the sprinkler head.

As Toney has not come forward with any facts which would allow a rational trier of fact to conclude that there was a retaliatory motive behind the disposal of the water damaged contents of his cell, entry of summary judgment is appropriate with respect to the assertions of retaliation against Defendants.

An appropriate order will follow.

Dated: March 18, 2014

**United States District Judge**